# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DATACLOUD TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 25-169-GBW |
| | ) |
| MEDALLIA, INC., | ) |
| | ) |
| Defendant. | ) |

## MEDALLIA, INC.'S OPENING BRIEF IN SUPPORT OF
## <u>ITS RENEWED MOTION TO DISMISS</u>

OF COUNSEL:

Daniel Ravicher (*pro hac vice*)
ZEISLER PLLC
80 SW 8th St. Ste 3110
Miami, Fl 33130
(786) 505-1205
dan@zeisler-law.com

Tyler J. Leavengood (#5506)
Nicole K. Pedi (#6236)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
(302) 984-6000
tleavengood@potteranderson.com
npedi@potteranderson.com

Dated: May 20, 2025

*Attorneys for Defendant Medallia, Inc.*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| III. | SUMMARY OF THE ARGUMENT | 2 |
| IV. | STATEMENT OF FACTS | 3 |
| V. | LEGAL STANDARDS | 6 |
| VI. | ARGUMENT | 10 |
| | A. The FAC Contains No Allegations of Inducement or Joint Direct Infringement | 10 |
| | B. DataCloud Has Not, and Cannot, Plausibly Allege that Medallia Directly Infringes the '063 Patent (Count I) | 10 |
| | C. DataCloud Has Not, and Cannot, Plausibly Allege that Medallia Directly Infringes the '959 Patent (Count II) | 11 |
| | D. DataCloud Has Not, and Cannot, Plausibly Allege that Medallia Directly Infringes the '298 Patent (Count III) | 12 |
| | E. The Court Should Not Permit Yet Another Redo | 13 |
| CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) (en banc) ............................................................................. 7, 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................................6

*Astornet Techs. Inc. v. BAE Sys., Inc.*,
    802 F.3d 1271 (Fed. Cir. 2015) ..................................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 6, 11

*Caterpillar Prodotti Stradali S.R.L. v. Int'l Trade Comm'n*,
    847 F. App'x 893 (Fed. Cir. 2021) .............................................................................................9

*DataCloud Techs., LLC v. EuroMarket Designs, Inc.*,
    C.A. No. 25-847 (N.D. Ill. 2025) .............................................................................................13

*Fallat v. Cryomed, LLC*,
    2009 WL 1122139 (E.D. Mich. Apr. 24, 2009) .........................................................................9

*Gilbert v. New Line Prods.*,
    2009 WL 10666112 (E.D.N.C. Feb. 26, 2009) ........................................................................13

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) .....................................................................................................11

*Kuyat v. BioMimetic Therapeutics, Inc.*,
    747 F.3d 435 (6th Cir. 2014) ...................................................................................................13

*Multimedia Techs. PTE. Ltd. v. LG Elecs. Inc.*,
    2025 WL 679189 (E.D. Tex. Jan. 27, 2025) ................................................................... 7-9, 12

*Robocast, Inc. v. Youtube, LLC*,
    2022 WL 16922035 (D. Del. Nov. 14, 2022) ............................................................................9

*Shire ViroPharma Inc. v. CSL Behring LLC*,
    2019 WL 3546692 (D. Del. Aug. 5, 2019) ................................................................................6

*Travel Sentry, Inc. v. Tropp*,
    877 F.3d 1370 (Fed. Cir. 2017) ..................................................................................................7

*Wahpeton Canvas Co., Inc. v. Frontier, Inc.*
  870 F.2d 1546 (Fed. Cir. 1989)..............................................................................................5

**STATUTES**

35 U.S.C. § 271................................................................................................................. 9-11

**OTHER AUTHORITIES**

McDonough, James F., *The Myth of the Patent Troll: An Alternative View of the Function of Patent Dealers in an Idea Economy* .......................................................................................1

I.  **INTRODUCTION**

Defendant Medallia, Inc. ("Medallia"), respectfully moves to dismiss Plaintiff DataCloud Technologies, LLC's ("DataCloud") First Amended Complaint because each of the three expired patents asserted therein cannot be infringed by a single actor like Medallia. Instead, as alleged in the First Amended Complaint, infringement of each patent involves actions taken by at least two separate and independent actors. As such, Medallia does not perform each and every step of any of the asserted claims itself, nor is Medallia responsible for the actions of others that may or may not perform additional steps in the claims. Thus, as explained more fully below, Medallia cannot plausibly infringe any of the asserted patent claims in the Amended Complaint, which is therefore due to be dismissed. The dismissal should also be with prejudice given that DataCloud has already failed to cure this issue – here and in other cases – and further attempts would be futile, as the claims say what they say and cannot be changed.

II. **NATURE AND STAGE OF THE PROCEEDINGS**

DataCloud, a "patent dealer,"[1] filed its initial Complaint in this case on February 11, 2025 (D.I. 1), alleging infringement of three expired patents:

- U.S. Pat. No. 6,651,063 ("the '063 patent") (expired 1/28/20) (Count I);
- U.S. Pat. No. 7,209,959 ("the '959 patent") (expired 4/4/20) (Count II); and,
- U.S. Pat. No. 7,398,298 ("the '298 patent") (expired 3/29/22) (Count III).

DataCloud asserts that various Medallia *products* – (i) a Medallia mobile app distributed via the Google Play Store (Count I); (ii) the www.medallia.com website infrastructure (Count II);

---

[1] *See* McDonough, James F., *The Myth of the Patent Troll: An Alternative View of the Function of Patent Dealers in an Idea Economy*. Emory Law Journal, Vol. 56, p. 189, at 201, 2006, Emory Public Law Research Paper No. 07-6, Emory Law and Economics Research Paper No. 07-7, Available at SSRN: https://ssrn.com/abstract=959945 ("A more suitable, market-contextual term for nonpracticing patent owners who license or enforce their patents is 'patent dealers.'"). Author McDonough serves as plaintiff's lead counsel on this and dozens of other DataCloud cases.

and, (iii) web-based roles management in Crowdicity, an on-line Medallia product (Count III) – directly infringe selected *method claims* of its expired patents.[2]

On April 7, 2025, Medallia filed a Rule 12(b)(6) motion to dismiss (D.I. 8) and, on April 18, 2025, the parties agreed (D.I. 16) to extend DataCloud's response date to April 28. That extended deadline passed with no response from DataCloud. On April 29, Medallia answered (D.I. 18) the complaint. And on May 1, DataCloud attorney McDonough emailed Medallia's counsel (Ravicher dec., Ex. 1) seeking consent for a retroactive extension to file an amended complaint.

While Medallia opposed DataCloud's "motion to file an amended complaint because of prejudice [Medallia had already answered the complaint] and futility," Medallia did "not oppose giving [DataCloud] more time to file an opposition to the motion [to dismiss]." (*Id.*) DataCloud subsequently moved for leave to file its amended complaint (D.I. 19), omitting from its motion the fact that Medallia had already agreed to retroactively extend time to respond to the motion. (*Compare* D.I. 19-2, Ex. 1 (May 1st 10pm email) *with* Ravicher dec., Ex. 1 (May 2nd 2pm email in same email thread).)

On May 6, the Court granted (D.I. 20) DataCloud a retroactive extension of time to amend its complaint under Rule 15, dismissed Medallia's motion to dismiss as moot, and directed that Medallia respond to DataCloud's amended complaint by May 20. Accordingly, Medallia brings this renewed motion to dismiss under Rule 12(b)(6) and respectfully requests that the Court grant it for the reasons that follow.

### III.    SUMMARY OF THE ARGUMENT

Direct infringement of method claims – which is all that DataCloud alleges in Counts I-III

---

[2] The reason that DataCloud claims it can bring cases long after its patents have expired is that requirements for pre-expiration actual or constructive notice (allegedly) do not apply in cases where a plaintiff asserts only method claims of a patent that contains both method and apparatus claims.  The Court need not address this questionable legal proposition to decide this motion.

– requires that all steps of the asserted method claims be performed by, or attributable to, Medallia. But in Counts I-III, DataCloud relies on theories of infringement that require the independent action of third parties:

- an Android phone user seeking to download the Medallia Mobile 3 app from the Google Play Store (Count I);

- an Internet user who initiates a visit to the URL www.medallia.com (Count II); and,

- a user of Medallia's Crowdicity product who configures the product through its user interface (Count III).

DataCloud makes no allegations as to why the actions of any of these third parties should be attributed to Medallia. Nor could it, because such attribution would require either that Medallia "control or direct" the third parties, or that Medallia form a "joint enterprise" with them. Neither of these could possibly be pled in a plausible way and are certainly not so pled in the First Amended Complaint. Therefore, dismissal under Rule 12(b)(6) is appropriate, and leave to attempt yet another amendment under Rule 15(a)(2) is not.

## IV.   STATEMENT OF FACTS

DataCloud's First Amended Complaint ("FAC," D.I. 19-3) asserts the same three patents against the same three products as its initial complaint. But the FAC adds "Evidence of Use Charts" for each of the asserted patents, as follows:

- FAC, Ex. A[3] – chart for '063 patent;

- FAC, Ex. B – chart for '959 patent; and,

- FAC, Ex. C – chart for '298 patent.

---

[3] While these charts are referenced as Exhibits 1-3 in the body of the FAC (*e.g.*, ¶25), they are labelled as Exhibits A-C and paginated as A1-A18, B1-B16 and C1-C15, which is how Medallia will reference them in this motion.

Starting with ***Count I*** (the '063 patent), the FAC alleges that "the Medallia Android apps met each and every step of at least Claim 4 of the '063 Patent, either literally or equivalently." (¶25.) The FAC references Ex. A ("As detailed in Exhibit 1 ...") and purports to explain how "using the Medallia Android apps, Defendant performed ..." (*id.*) the numerous method steps of claim 4.

Exhibit A of the FAC offers a long and convoluted theory as to why the Medallia Mobile 3 Android app (allegedly) meets the limitations of claim 4. However, at a high level sufficient to resolve this motion, DataCloud's theory can be reduced to the following:

1. an Android phone user visits the Play Store's page for Medallia Mobile 3 (FAC, Ex. A, at A-1);

2. she taps the Install button on her phone (*see* the red rectangle around "Install" on page A-5 of Ex. A); and,

3. that tap initiates a series of actions that (allegedly) includes performing every method step of claim 4 (FAC, Ex. A, at A-6 - A-18).

Significantly, the details of (3) don't matter here. All that matters, as explained in the argument below, is that infringement of claim 4 – as alleged by DataCloud – requires the Android phone user to tap "Install" on her phone. The FAC contains nothing regarding any control or direction that Medallia imposes on the Android phone user, nor any explanation as to how she could be part of a "joint enterprise" with Medallia.

Turning next to ***Count II*** (the '959 patent), the FAC alleges that Medallia's "network systems for supporting multiple domain names on the same website infrastructure" – which the FAC calls the "Medallia website infrastructure" – infringes independent claim 1 (as well as dependent claims 3, 4, 7, and 8)[4] of the '959 patent. (*Id.*, ¶35 & Ex. B, at B-2 - B-3.) Much like in

---

[4] The Court need not separately consider the sufficiency of DataCloud's allegations regarding dependent claims because if DataCloud's allegations as to independent claim 1 are

the case of Count I, the FAC presents a theory of infringement for Count II whereby:

1. an Internet user enters the URL for Medallia's website (www.medallia.com) into a web browser and initiates a request for that page (*see* FAC, Ex. B, at B-4 (showing medallia.com in the browser's address bar); *see also id.* (pink box indicating that the URL https://www.medallia.com/ has been requested); and,

2. the request for the Medallia webpage (allegedly) initiates a long sequence of actions performed by various (alleged) components of a network infrastructure (allegedly) operated/controlled by Medallia (*see generally* FAC, Ex. B, at B-5 - B-16).

Once again, the details of (2) don't matter for this motion. What matters is that the sole infringement theory alleged in the FAC starts with the action of a third party; namely, the Internet user who requests the Medallia webpage using her browser. Without that action of the third-party Internet user, the long sequence of actions that (allegedly) follows cannot occur. And like Count I, the FAC contains nothing regarding any control or direction of the Internet user by Medallia, nor anything regarding how she could be part of a "joint enterprise" with Medallia.

In **Count III** (the '298 patent), DataCloud alleges that "Medallia web-based management of user roles and permissions" in Medallia's online Crowdicity[5] product – which the FAC calls "Medallia roles management" – infringes claim 13 of the '298 patent. (*Id.*, ¶¶44-45 & Ex. C.) Like with the previous counts, DataCloud outlines a long, complex infringement theory (FAC, at C-4 - C-14), the details of which are largely irrelevant to this motion. And like with the previous counts,

---

insufficient/implausible, it necessarily follows that allegations as to claims that depend from claim 1 are insufficient/implausible as well. *See Wahpeton Canvas Co., Inc. v. Frontier, Inc.* 870 F.2d 1546, 1552 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim").

[5] As of 03/15/2023, this product is now called Medallia Ideas, https://docs.medallia.com/en/medallia-ideas/medallia-ideas-release-notes/medallia-ideas-release-notes/crowdicity-to-medallia-ideas.

Count III's infringement theory necessarily involves actions by at least two parties:

1. Medallia, who provides the accused online platform for crowdsourced idea generation (*see, e.g.,* FAC at C-1); and,

2. a user of the platform, who invokes certain features of the platform using her web browser (*see*, *e.g.*, FAC at C-6 (mapping the claim language "receiving at least one request ... from participating users" to a feature of the accused product that "allows you to manage existing users and invite new users to the platform")).

Once again, the details of (2) don't matter for this motion. What matters is that the sole infringement theory alleged by DataCloud necessarily requires the action of a third party: a user of the Medallia Ideas product. Without the third-part user's action, at least the "receiving at least one request ... from participating users" step of claim 13 cannot be met. And like with the previous counts, the FAC contains nothing regarding any control or direction of the user by Medallia, nor anything regarding how she could be part of a "joint enterprise" with Medallia.

## V.  LEGAL STANDARDS

***Plausibility.*** To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specifically, a complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A claim is facially plausible when the factual allegations allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. "It is now well established that both direct and indirect infringement claims are subject to the *Twombly/Iqbal* standard." *Shire ViroPharma Inc. v. CSL Behring LLC*, 2019 WL 3546692, at *3 (D. Del. Aug. 5, 2019) (citing *IP Commun. Solutions, LLC v. Viber Media (USA) Inc.*, 2017 WL 1312942, at *2 (D. Del. Apr. 5, 2017)).

6

***Direct infringement.*** Direct infringement of a method claim requires that "all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*). "It is well established that an instrumentality, standing alone, cannot directly infringe a method claim." *Multimedia Techs. PTE. Ltd. v. LG Elecs. Inc.*, 2025 WL 679189, at *2 (E.D. Tex. Jan. 27, 2025), *report and recommendation adopted*, 2025 WL 675448 (E.D. Tex. Mar. 3, 2025) (citing *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993)).

***Joint direct infringement.*** In *Akamai*, the *en banc* Federal Circuit clarified that where, like in this case, "more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Akamai*, 797 F.3d at 1022. This may occur in two circumstances: "(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Id*. Direction and control may be found "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id*. at 1023. Whether a single actor directed or controlled the acts of a third party depends on the circumstances of each case. *Id*. Mere guidance or instruction, however, is insufficient. *See Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1380 (Fed. Cir. 2017).

In *Multimedia Techs. PTE. Ltd. v. LG Elecs. Inc.*, the Eastern District of Texas court analyzed a many-steps method claim similar to those at issue in this case:

> 1. A method for displaying content on a television, comprising:
>
> receiving a first input via an input device associated with the television;

7

>>in response to the first input, displaying, via the television, an application panel interface;
>
>>determining content currently being shown on the television;
>
>>identifying at least one of a content source and content information associated with the content currently being displayed via the television;
>
>>based on the content and the at least one of the content source and the content information, providing a first content panel in the application panel interface, wherein the first content panel is a first type of application panel;
>
>>receiving a first directional input via the input device associated with the television;
>
>>determining, based on a first direction associated with the first directional input, a second content panel to display via the television in the application panel interface, wherein the second content panel is a second type of application panel;
>
>>retrieving, from memory, a second content information based on the second type of content panel; and
>
>>displaying, via the television, the second content information in the second content panel.

*Multimedia Techs.,* 2025 WL 679189, at *3 (emphasis in original). Noting that in the above-*emphasized* first step, "the smart TV receives an input from, say, a remote control which has had one of its buttons pressed" and that "it is a *user* who presses the button on the remote," *id.* (emphasis in original), the court turned to an analysis "under a theory of joint infringement." *Id.* Crediting the defendant's argument "that there is a failure in controlling the manner or timing of a third party's performance where the seller does not impose any restrictions or conditions on its customers, and they can freely choose what to do with seller's product," *id.* at *5, the court

8

concluded that there can be "no direct infringement of the method claims." *Id.* at *6. Analogizing to an earlier case where "plaintiff [] contended that the defendant controlled the manner of users' performance of methods associated with [its] system because the defendant's own software established what data customers could enter and how they could enter it," the court observed that "[t]his is not what the Federal Circuit meant by controlling the manner of performance [in *Akamai*]." *Id.*

***Inducement of infringement.*** "Inducement to infringe occurs under 35 U.S.C. § 271(b) 'when there has been direct infringement,' and 'the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *Fallat v. Cryomed, LLC*, 2009 WL 1122139, at *3 (E.D. Mich. Apr. 24, 2009) (quoting *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005)). Under 35 U.S.C. §271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."

"To prove inducement of infringement, the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Astornet Techs. Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1279 (Fed. Cir. 2015) (internal citation and quotation omitted). "Induced infringement requires proof of two types of knowledge by the alleged inducer: knowledge of the patent in question and knowledge that the induced acts infringe on the patent." *Caterpillar Prodotti Stradali S.R.L. v. Int'l Trade Comm'n*, 847 F. App'x 893, 898 (Fed. Cir. 2021) (citations omitted). "The knowledge requirement is not met if plaintiff fails to allege that defendant acquired its knowledge before the expiration date of the patent." *Robocast, Inc. v. Youtube, LLC*, 2022 WL 16922035, at *2 (D. Del. Nov. 14, 2022) (citation omitted).

9

## VI.  ARGUMENT

### A.  The FAC Contains No Allegations of Inducement or Joint Direct Infringement

DataCloud does not even attempt to allege induced infringement in the FAC. First, it nowhere cites 35 U.S.C. §271(b), the statutory section that defines inducement. Second, while the FAC makes a boilerplate reference to "the inducement of third parties" (¶10) in connection with alleging venue and jurisdiction, the word "inducement" (or "induce") does not appear anywhere else in the document. Third, and most importantly, in a document filed by the same lead firm in a parallel action (on the day after DataCloud missed its deadline in this case, but before it sought its retroactive extension), "DataCloud admit[ted] it did not plead induced infringement" for nearly identically worded allegations of infringement of the '063 and '959 patents. (Ravicher dec., Ex. 2, at 12.)

As for joint direct infringement, Medallia must either "direct or control" the users'/visitors'/customers' actions or "form a joint enterprise" with them. *Akamai*, 797 F.3d at 1022. The FAC is completely devoid of any such allegations. Nor does it plead any facts that might support such allegations. Even under a liberal reading, which is hardly appropriate in the case of a serial plaintiff who has already amended its complaint, the FAC cannot be fairly construed as including a "joint direct" infringement theory for any of Counts I-III.

### B.  DataCloud Has Not, and Cannot, Plausibly Allege that Medallia Directly Infringes the '063 Patent (Count I)

DataCloud's sole allegation as to infringement of the '063 patent fails as a matter of law. Even with all well-pleaded facts accepted as true, DataCloud's theory of infringement – as articulated in the FAC – necessarily begins with the user pressing "Install" on the screen of her Android phone. (FAC, Ex. A, at A-5.) Without her action, none of the (alleged) infringing acts that follow (e.g., Ex. A, at A-6 - A-18) will happen. It cannot, therefore, be the case that Medallia

performed all the method steps of claim 4, and DataCloud's conclusory allegations to the contrary (e.g., "Medallia performed the recited method." Ex. A, at A-5)[6] fail as implausible. *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions").

DataCloud does not even attempt to plead facts to justify attributing the Android phone user's "Install" action to Medallia. Nor could it. Medallia does not control or direct users to install the Medallia Mobile 3 app; that decision is each user's alone. So, too, is the timing and manner of the user's action. Indeed, if anything could be alleged about who controls the "manner" of her installation action, it would be Google (who runs the Play Store), not Medallia. Accordingly, any attempt to artfully redraft Count I to assert a "joint direct infringement" theory would ultimately be futile.

> C. **DataCloud Has Not, and Cannot, Plausibly Allege that Medallia Directly Infringes the '959 Patent (Count II)**

Count II is even weaker than Count I. DataCloud's infringement theory for Count II relies on the idea of a random Internet user who (allegedly) causes the "Medallia website infrastructure"[7] to perform all sorts of actions in response to her request to visit the www.medallia.com web page.

Once again, Medallia (or the "Medallia website infrastructure" – assuming that the

---

[6] The FAC also alleges that "the Medallia Android apps met each and every step of at least Claim 4 of the '063 Patent" (¶23) but this, too, is implausible as a matter of law because "a method claim is not directly infringed by the sale of an apparatus even though it is capable of performing only the patented method." *Joy Techs.*, 6 F.3d 770, 774-75. "A method claim is *directly* infringed only by one practicing the patented method," *id.* (emphasis in original), and the FAC does not allege indirect infringement under 35 U.S.C. §§ 271(b)-(c).

[7] DataCloud's infringement theory additionally postulates the existence of an elaborate and particular "website infrastructure" for which there is no evidence and which, in fact, contradicts the language of claim 4, as others have pointed out. *See infra* note 9. While Medallia agrees that claim 4 is not infringed for those and other reasons, this motion focuses on what Medallia believes to be the most obvious defect in DataClould's infringement theory.

postulated infrastructure exists) cannot itself directly infringe claim 1 of the '959 patent because Medallia does not, itself, perform all the acts recited in the claim. Indeed, claim 1 expressly requires "in response to *a request by a client* to initiate communication with a destination website; ..." (FAC, Ex. B, at B-2 (emphasis added).) Whether and when the client makes such a request is exclusively her choice, not Medallia's. And the fact that making such a request involves entering the string "www.medallia.com" does not mean that Medallia directs or controls the manner of her request. "This is not what the Federal Circuit meant by controlling the manner of performance [in *Akamai*]." *Multimedia Techs.*, 2025 WL 679189, at *6.

In sum, other than conclusory assertions (e.g., "Medallia website infrastructure performed the recited method and step." Ex. B, at B-4), the FAC articulates no facts that might justify attributing the Internet user's request to Medallia. Nor could it, for the reasons discussed.

### D.      DataCloud Has Not, and Cannot, Plausibly Allege that Medallia Directly Infringes the '298 Patent (Count III)

The defect in Count III is similar to that in Count II. In Count III, DataCloud asserts that Medallia's online Crowdicity product (now Medallia Ideas) performs a long series of actions (Ex. C, at C-7 - C-15) in response to a request from a participating user (Ex. C, at C-6). The claim itself specifically recites "receiving at least one request ... from participating users ..." and DataCloud acknowledges that this language requires the action of "Participating users." *Id.* But nothing in the FAC even attempts to establish why the actions of those "users" should be attributed to Medallia. Nor could such an allegation be made in a legally plausible way.

Indeed, the mere fact that "[Medallia's] own software establishe[s] what data customers could enter and how they could enter it" does not establish that Medallia "control[s] the manner of users' performance." *Multimedia Techs.*, 2025 WL 679189, at *6. Therefore, any amendment to this effect would not cure the problem.

### E. The Court Should Not Permit Yet Another Redo

DataCloud has already been granted a retroactive extension of time to amend its complaint without even attempting to show "excusable neglect," as the Federal Rules of Civil Procedure require.[8] The multi-actor infringement defects addressed in this motion were pointed out to DataCloud in a parallel action pending in the Northern District of Illinois two weeks before DataCloud belatedly filed the FAC in this case.[9] And perhaps most importantly, the fundamental problems with DataCloud's infringement theories (*e.g.*, that Medallia does not "control" or "form joint enterprises with" its users) cannot be overcome through artful drafting.

This Court should exercise its discretion and deny any request by DataCloud to further amend its complaint. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) ("a district court 'acts within its discretion in denying a Rule 15 and a Rule 59 motion on account of undue delay—including delay resulting from a failure to incorporate previously available evidence.'") (citation omitted).

### CONCLUSION

Medallia respectfully requests that the Court dismiss all claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6), with prejudice, and without leave to amend.

---

[8] DataCloud brought its motion for leave to amend under Rule 15(a)(2). But because time had already expired and DataCloud was seeking a retroactive extension, its motion should have been brought under Rule 6(b)(1)(B) ("on motion made after the time has expired if the party failed to act because of excusable neglect"); *see Gilbert v. New Line Prods.*, 2009 WL 10666112, at *2 (E.D.N.C. Feb. 26, 2009) ("When a party's request for an extension is untimely, they must demonstrate that their failure to abide by the originally prescribed deadline was caused by 'excusable neglect.'") (citing Rule 6).

[9] *See DataCloud Techs., LLC v. EuroMarket Designs, Inc.*, C.A. No. 25-847 (N.D. Ill. 2025), Def. Mot. to Dis., filed 04/15/25 (Dkt. 32) (attached as Ravicher dec., Ex. 3), at 9 ("even if DataCloud did adequately allege that C&B performed certain steps of claim 1 of the '959 patent, it is implausible that C&B somehow controls ***all three*** of the client, forwarder, and destination server devices within the claimed method") and 10 ("Ex. D fails to plausibly allege that C&B performed every step of claim 4 of the '063 patent").

13

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| Daniel Ravicher (*pro hac vice*)<br>ZEISLER PLLC<br>80 SW 8th St. Ste 3110<br>Miami, Fl 33130<br>(786) 505-1205<br>dan@zeisler-law.com<br><br>Dated: May 20, 2025 | By: */s/ Nicole K. Pedi*<br>  Tyler J. Leavengood (#5506)<br>  Nicole K. Pedi (#6236)<br>  Hercules Plaza<br>  1313 N. Market Street, 6th Floor<br>  Wilmington, DE 19801<br>   (302) 984-6000<br>  tleavengood@potteranderson.com<br>  npedi@potteranderson.com<br><br>*Attorneys for Defendant Medallia, Inc.* |

14